***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. An employee/employer relationship existed at the time of the alleged injury.
2. American Home Assurance was the carrier on the risk at the time of the injury.
3. The date of the injury was April 8, 1999.
4. The parties were subject to the North Carolina Workers' Compensation Act (hereinafter "Act") at the time of the injury, the employer employing the requisite number of employees to be bound under the provisions of the Act.
5. Plaintiff's average weekly wage will be determined by Form 22.
 ***********
Based upon the evidence of record the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner plaintiff was 41 years old and had completed the eleventh grade. On December 7, 1997 plaintiff began working for defendant-employer first in the supercenter store 1238 then in the distribution center loading freight trucks and ensuring that the trucks went to the proper location.
2. Plaintiff was using a hand jack loading a pallet of paper towels on April 8, 1999 when a coworker using a power equipment driver struck the merchandise on plaintiff's hand jack causing the hand jack to impact plaintiff's left foot. Plaintiff testified that the force of the impact was sufficient to push him to the floor.
3. Plaintiff's workers' compensation claim was accepted on a Form 63 dated May 24, 1999. No denial of the claim was filed during the requisite period.
4. Brian Dixon (hereinafter "Dixon"), operations manager at defendant-employer, discussed the incident with plaintiff within five minutes of the occurrence. Dixon does not recall plaintiff reporting that he fell or mentioning any back injury. Dixon recalled plaintiff indicating that he was struck on the back of the heel and was concerned that the incident had aggravated a pre-existing Achilles tendon rupture that had required surgical repair in 1997. Joanne Tyson, personnel manager, did not recall plaintiff stating that he had fallen or reporting any back pain on April 8, 1999.
5. Plaintiff was treated at Occupational Health Services and diagnosed with an ankle sprain/contusion. He did not report any back problems. Because of persistent pain, plaintiff was referred to Cape Fear Orthopaedic.
6. Dr. Karen Jones, an orthopaedic surgeon at Cape Fear Orthopaedics, treated plaintiff beginning on April 26, 1999, and continuing over approximately the next five months. Plaintiff recounted the history of his accident, noting that the force of impact was sufficient to "knock" him to the ground. No mention of any back symptoms was noted. X-rays were normal and Dr. Jones diagnosed an ankle contusion. Dr. Jones initiated conservative treatment including medications, injections, periods of ankle immobilization and physical therapy. Dr. Jones noted swelling in the ankle that was persistent throughout the course of treatment. The degree of swelling ranged from minimal to moderate. Plaintiff continued to report consistent ankle and foot pain. Dr. Jones restricted plaintiff to sedentary work or light duty work in a seated position.
7. Plaintiff's condition had not resolved by July 1999. Dr. Jones ordered an MRI of the ankle. The results essentially demonstrated several conditions not related to plaintiff's employment injury. Dr. Jones concluded that plaintiff's symptoms were related to the April 1999, accident and complicated by plaintiff's prior Achilles tendon injury.
8. Continued conservative treatment was largely unsuccessful in resolving plaintiff's constant pain in his lateral ankle and heel by September 1999. Dr. Jones considered, but seriously questioned, surgical intervention to repair a perceived area of tendonitis near the prior Achilles tear. Dr. Jones determined that a second opinion was advisable.
9. The Miller Orthopaedic Clinic performed a comprehensive multi-disciplinary of plaintiff in December 1999. The essential findings from the examination were:
 a. An opinion that plaintiff's chronic pain was related to the sural nerve, with neuritis and questionable sympathetic mediated pain patterns, formerly termed "reflex sympathetic dystrophy"(hereinafter "SMP").
 b. Further diagnostic evaluation of the left lower extremity to rule out SMP by performing a paravertebral block. If the paravertebral block was unsuccessful, nerve blocks of the ankle were recommended. If nerve blocks of the ankle failed to provide relief, treatment would consist of chronic pain management including the use of sedating antidepressants and anticonvulsants.
c. A Functional Capacity Evaluation identified no malingering.
d. Plaintiff's conditions were caused by his work related injury.
e. Plaintiff was limited to sedentary work.
10. Plaintiff was referred to Dr. Toni Harris, board certified in pain management, on March 16, 2000. Dr. Harris noted swelling in the foot, change of sensation and tenderness. Dr. Harris initiated multiple treatments, including medications and physical therapy. Dr. Harris did not find evidence of SMP but, consistent with the recommendations of the Miller Orthopaedic Clinic, recommended lumbar sympathetic blocks in order to rule out SMP.
11. Plaintiff underwent a lumbar sympathetic block on April 26, 2000. The procedure actually produced more swelling in plaintiff's foot with no significant relief of pain. Dr. Harris opined that this phenomenon occurs when pain is present but is not the result of SMP.
12. Dr. Harris, consistent with the recommendations of the Miller Orthopaedic Clinic, ordered a lumbar epidural with local anesthetic as a diagnostic tool to determine if any component of plaintiff's foot pain was caused by his back and "to retry the sympathetic blockade from a different way." The procedure reproduced back pain at a point lower than the point of injection and provided no relief for plaintiff's foot. Dr. Harris then ordered an EMG that was positive for S1 radiculopathy and ordered an MRI that revealed an L5-S1 herniated disc.
13. Because of the results of the diagnostic lumbar epidural, Dr. Harris attempted to refer plaintiff to a neurosurgeon for further evaluation as to the ruptured disc and its effect on his foot pain. Defendant-Employer denied the referral contending that the ruptured disc was not encompassed in plaintiff's work-related accident.
14. Dr. Harris has not treated plaintiff since June 1, 2000, even though Dr. Harris had not completed plaintiff's medical treatment.
15. Defendant-Employer, instead, referred plaintiff to Dr. Robert G. Fletcher of U.S. Healthworks for an independent medical evaluation on July 21, 2000. Dr. Fletcher diagnosed plaintiff with a crush injury to the left ankle, at maximum medical improvement. Dr. Fletcher also diagnosed plaintiff with a herniated disc at L5-S1 on the left, unrelated to plaintiff's industrial accident. Dr. Fletcher indicated that he found nothing in the medical history to suggest that the ruptured disc was caused during the industrial accident and he held the opinion that a simple fall usually did not cause such ruptures.
16. Plaintiff sought treatment at the VA Medical Center on September 18, 2000. EMG and nerve conduction studies were performed indicating evidence of multilevel left lumbosacral radiculopathy, worse at the L5 level. Plaintiff received treatment in the pain management department of the VA Medical Center beginning October 2000. He was placed on a medication regimen including Methadone, Neurontin and Sulindac, and was released on July 3, 2001, continuing to take five milligrams of Methadone two times daily. Treating physicians at the VA Medical Center were unable to provide any meaningful opinions as to causation of plaintiff's injuries.
17. Plaintiff was terminated from his position with defendant-employer on June 9, 2000, because he was absent from work for greater than one year. He remains out of work as of the date of the hearing before the deputy commissioner. Defendant-Employer has continued payment of temporary total disability benefits to the date of the hearing before the Full Commission.
18. Plaintiff has proven by the greater weight of the evidence that the force of impact to his foot on April 8, 1999, resulted in a fall to the floor. While defendant-employer's employees testified that they did not "recall" plaintiff stating that he had fallen, plaintiff did report the fall to Dr. Jones early in the period of his medical treatment. The report to Dr. Jones was at a time when plaintiff was not aware of the significance of the report of the fall, giving greater credence to the report. Additionally, it would not have been unusual for plaintiff to fail to report the fall or for defendant-employer's employees not remembering such a report, if it was in fact made, as plaintiff had no acute pain in his back at the time and the focus was on the acute pain to the injured foot.
19. Defendant-Employer successfully impeached plaintiff's testimony at the hearing before the deputy commissioner that he had experienced back pain as a result of the fall, but he had not reported the pain because it was sporadic and minor in nature. Plaintiff admitted that he had a felony conviction for "burglary and stealing with deceit" that was undisclosed when he applied for employment at defendant-employer. Furthermore, plaintiff designed and implemented a plan to involve local police officers in confronting a private investigator hired by defendant-employer to conduct surveillance of plaintiff during the investigation of his claim.
Plaintiff essentially implicated the private investigator as a possible participant in an armed robbery of plaintiff. Plaintiff's explanation of the events leading to the police questioning the private investigator are wholly unbelievable and seriously impeach plaintiff's credibility. Plaintiff's testimony as to back pain prior to May 24, 2000, which is not supported in the numerous medical records, is not credible.
20. The greater weight of the evidence establishes that plaintiff's ruptured disc was a result of his accident on April 8, 1999. Dr. Harris's testimony, taken as a whole, establishes that it was "likely" that the rupture occurred during the accident. Dr. Harris' opinion is given more weight than that of Dr. Fletcher. First, Dr. Fletcher was not aware that plaintiff had fallen during the accident, even though when made aware of that fact, he testified that it was "not likely" that a simple fall would cause the rupture.
Second, Dr. Harris testified that she had previously treated patients in which an asymptomatic disc as to back pain could produce the symptoms in the feet such as plaintiff was experiencing. Third, Dr. Fletcher, when confronted with Dr. Harris' opinions, admitted that he would not disagree with Dr. Harris based on his opinion of her medical skills.
21. Plaintiff remains unable to earn the same or greater wages in any employment based upon his physical limitations as last reported by Dr. Harris. Plaintiff has proven by the greater weight of the evidence that he has not reached maximum medical improvement based upon Dr. Harris testimony that further medical evaluation and treatment is needed.
22. Dr. Harris' proposed referral of plaintiff to a neurosurgeon is reasonably required to affect a cure, provide relief or lessen the period of disability of plaintiff's foot injury. Referral is warranted even though plaintiff has been receiving treatment for pain maintenance at the VA Hospital because it is unclear from the VA Hospital's records that the procedures pursued by Dr. Harris were completed.
23. Plaintiff's counsel has provided valuable legal services, including, but not limited to, the preparation and trial of this workers' compensation action. A reasonable attorney fee for the professional services rendered is 25% of the compensation benefits awarded plaintiff.
24. This workers' compensation action involved substantial questions of both fact and law, and the prosecution and defense of the action was not stubborn, unfounded or litigious.
 ***********
Based upon the foregoing findings of facts, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As the result of the April 8, 1999 injury by accident, plaintiff is entitled to be paid by defendants temporary total disability compensation at the rate of $282.68 per week from the date of injury through the present and continuing until such time as plaintiff returns to work or further order of the Industrial Commission subject to a reasonable attorney's fee. N.C. Gen. Stat. § 97-29.
2. Plaintiff has proven by the greater weight of the evidence that the ruptured disc at L5-S1 was caused by the accident of April 8, 1999. Clickv. Pilot Freight Carriers, 300 N.C. 164, 265 S.E.2d 389, 391 (1980).
3. Plaintiff is entitled to all reasonable and necessary medical treatment, including referral to a neurosurgeon, for foot, ankle and back arising out of the injury by accident to the extent the treatment has a tendency to effect an overall cure, grant relief or lessen the period of disability. N.C. Gen. Stat. §§ 97-25, 97-25,1.
4. Plaintiff is entitled to have Dr. Harris as plaintiff's designated treating physician with authorization to complete such medical treatment as might be reasonably necessary and is related to the injury by accident. N.C. Gen. Stat. § 97-25.
5. Plaintiff has not reached maximum medical improvement. N.C. Gen. Stat. § 97-31.
6. Plaintiff's counsel of record is entitled to a reasonable attorney fee of 25% of compensation benefits awarded. N.C. Gen. Stat. § 97-90.
7. Plaintiff is not entitled to an assessment of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall continue to pay plaintiff temporary total disability benefits at the weekly rate of $282.68, subject to the award of attorney fees until plaintiff returns to work or until further order of the Commission.
2. Dr. Harris is hereby designated as plaintiff's treating physician. Specifically, defendants shall pay for an evaluation of plaintiff by Dr. Harris for a determination of whether a referral to a neurosurgeon is medically necessary and, if so, she may make such reasonably necessary referral. Furthermore, defendants shall pay for all of plaintiff's reasonable and necessary medical treatment arising out of the injury by accident to the extent the treatment has a tendency to effect an overall cure, grant relief or lessen the period of disability.
3. An attorney's fee of twenty-five percent of the compensation due plaintiff is hereby approved and awarded to plaintiff's attorney to be paid by deducting every fourth weekly compensation check due plaintiff and paying directly to plaintiff's attorney.
4. Defendants shall pay the costs of this action.
This the 4th day of March 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER